# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY BARTKO,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE, EXECUTIVE OFFICE OF
UNITED STATES ATTORNEYS, *et al.*,

    Defendants.

Civil Action No. 17-781 (JEB)

## <u>MEMORANDUM OPINION</u>

This case presents the latest in a long series of disputes between Plaintiff Gregory Bartko and various branches of the federal government over the disclosure of records under the Freedom of Information Act. For a number of years, Bartko has sought records from different agencies in an effort to uncover information about alleged prosecutorial misconduct associated with his conviction for criminal fraud in the Eastern District of North Carolina. He filed this particular *pro se* suit in connection with several FOIA requests he made to Defendant Executive Office for United States Attorneys. EOUSA now moves for summary judgment as to two of those requests and dismissal as to another, contending that it properly withheld documents under several FOIA exemptions and that Bartko's claims are otherwise procedurally deficient. Finding that some but not all of EOUSA's withholdings were proper, and that one of Bartko's claims is procedurally barred but the other is not, the Court grants in part and denies in part EOUSA's Motion.

# I.     Background

The Court has recounted the circumstances underlying Bartko's convictions and demands for records in several Opinions in his previous FOIA suit.  See, e.g., Bartko v. U.S. Dep't of Justice, 62 F. Supp. 3d 134 (D.D.C. 2014).   Rather than retread the same ground, the Court confines its discussion of the factual and procedural background to the particulars of the three FOIA requests at issue in Defendant's Motion.  (A fourth request is the subject of separate, ongoing summary-judgment briefing.)

A.  Request No. 2014-486

Bartko filed the first FOIA request at issue here, No. 2014-486, with EOUSA in 2013, seeking records associated with his prosecution for criminal fraud in the Eastern District of North Carolina.  See ECF No. 12 (Answer), Exh. 1, Attachs. F & H.  Concluding that the scope of the request was so expansive that its search would take over 93 hours and stretch across 21 boxes of records, EOUSA refused to process it without advanced payment of $2,618.  Id., Attach. G.

Bartko initially sought judicial review of EOUSA's response in a previous FOIA suit. This Court dismissed the claim without prejudice because he had not exhausted his administrative remedies.  See Bartko v. U.S. Dep't of Justice, 2014 WL 12787640, at *7 (D.D.C. Sept. 9, 2014).  The Court explained that Bartko "remains free to bring a new suit — or conceivably seek to amend his current one — challenging those actions, provided he has fully exhausted his administrative remedies before filing."  Id.

After the Court's dismissal, Bartko tried to do just that.  He filed an administrative appeal with the Office of Information Policy, arguing that the fee demand was improper.  See Answer, Exh. 1, Attach. L.  But OIP refused to hear the appeal on the ground that his request remained the subject of litigation.  Id., Attach. T.

Several years after this dismissal, Bartko filed this suit. He again seeks judicial review of EOUSA's refusal to process his request without advance payment of processing fees. See ECF No. 1 (Compl.), ¶¶ 52–53. EOUSA asks for summary judgment as to this claim.

B. Request No. 2014-3847

Bartko originally submitted the second FOIA request, No. 2014-3847, to the Department of Justice's Office of Professional Responsibility. Id., ¶ 60. This request also sought records of Bartko's prosecution for criminal fraud — i.e., the same category of records subject to Request No. 2014-486. Id. OPR released some records and referred others — either 610 pages, 619 pages, or 620 pages, depending on whom you ask — to EOUSA for further processing. Id., ¶¶ 55–57; Answer, Exh. 1, Attach. P. EOUSA eventually released certain records, withheld and redacted others, and declined to process 519 pages until Plaintiff paid a processing fee of $51.90. Id.

Bartko initially sought judicial review of this claim in his previous FOIA suit. See Bartko v. U.S. Dep't of Justice, No. 13-1135, ECF No. 126 (Second Suppl. Compl.), ¶¶ 3–8. This Court granted summary judgment to EOUSA there, see Bartko v. U.S. Dep't of Justice, 102 F. Supp. 3d 342 (D.D.C. 2015), and Bartko appealed. The Court of Appeals recently reversed in part — on the question of whether Bartko was entitled to a public-interest fee waiver — and remanded the case to this Court. See Bartko v. U.S. Dep't of Justice, 898 F.3d 51, 74–76 (D.C. Cir. 2018).

While his appeal in the previous FOIA suit was pending, Bartko filed this action. He again argues that EOUSA failed to properly respond to his request for the 620 or so pages of records OPR had referred to Defendant. See Compl., ¶¶ 55–63. EOUSA asks the Court to

dismiss this claim because it violates the rule against "claim-splitting" — a sort of corollary to *res judicata*.

C. Request No. 2015-759

Bartko's third FOIA request in this case, No. 2015-759 — also originally submitted to OPR — sought any records of misconduct committed by Assistant United States Attorney Clay Wheeler, who prosecuted Plaintiff for criminal fraud in the Eastern District of North Carolina. See Compl., ¶ 27. After processing and releasing certain records, OPR referred several hundred additional pages — either 320 pages or 642 pages — to EOUSA. Id., ¶ 29. Invoking several FOIA exemptions, EOUSA withheld the records in full. Id., ¶ 30. Plaintiff's suit asks this Court to order the agency to hand over the records. Id., ¶¶ 38–39. Defendant now also seeks summary judgment as to this claim.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.  See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.     Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted).  In doing so, FOIA helps "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and

to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 754–55. "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Before the Court is Defendant's Motion to Dismiss and for Partial Summary Judgment. The Court addresses the requests separately and in the order in which the parties brief them.

A. Request No. 2015-759

EOUSA contends that summary judgment is appropriate as to Request No. 2015-759 because there is no genuine dispute of material fact over whether it properly withheld all responsive records pursuant to FOIA Exemptions 5, 6, and 7(C). See ECF No. 20 (Def. MSJ) at 3–13. Bartko resists this position on two grounds. First, as a threshold matter, he asserts that the Government possesses several hundred pages of responsive records that it has never processed or disclosed. See ECF No. 25 (Pl. Opp.) at 2–4. Second, he argues that the invoked exemptions do not apply to the records EOUSA has withheld. Id. at 4–24. On the first issue, the Court agrees with the Government that it has processed the relevant pages of responsive documents. On the second, with just one exception, the Court sides with Bartko that the agency is not entitled to summary judgment at this stage based on its invocations of certain exemptions.

1. *Responsive Records*

The Court first takes up Bartko's contention that EOUSA has failed to process all records responsive to his FOIA request.  In short, Plaintiff believes that there are 642 responsive pages, but that EOUSA has only processed 320.  See Pl. Opp. at 2–4.  Bartko's perturbation over EOUSA's position is understandable.  In the letter it sent him in response to this request, EOUSA averred that it had withheld 642 pages of records.  Id., Attach 2.  Then, in processing Bartko's appeal of its determination, the agency stated that it had reviewed only "320 pages of responsive records."  Answer, Exh. 1, Attach. D.  EOUSA has stuck to this latter position in the current Motion.

The good news is that the agency has finally explained the discrepancy.  In a declaration attached to its Reply, it explains that OPR technically referred to it 642 pages of responsive records, as Bartko suspected.  See ECF No. 30 (Def. Reply), Exh. 1 (Second Declaration of Tricia Francis).  Those 642 pages, however, consisted of the following: 320 pages that OPR had marked with preliminary FOIA determinations; a duplicate set of 320 pages that OPR had not marked; and two cover pages.  Id.  Confirming the make-up of the referral, EOUSA attached to the declaration a copy of the original referral letter OPR sent EOUSA stating that the referral contained a duplicate set.  Id., Attach. A.

This explanation resolves Bartko's concerns.  When the agency initially told Bartko that it had withheld 642 pages, it was being truthful: that is the total number of pages of records it had held back.  When it told Bartko later as part of his administrative appeal that it had reviewed only 320 pages, EOUSA likewise acted properly: the remaining 322 pages that it had ignored or missed were merely duplicates or cover pages.  With the discrepancies resolved, no evidence

remains that EOUSA possesses additional pages of responsive records that it has not yet processed or disclosed.

Notwithstanding EOUSA's most recent explanation, Bartko continues to believe that there is a genuine dispute of material fact over whether EOUSA processed all records responsive to this request. See ECF No. 33 (Pl. Surreply) at 3–6. He starts by questioning the veracity of the most recent declaration, noting that it was not made under penalty of perjury. But Bartko does not challenge the correctness of the document attached to the declaration — *i.e.*, OPR's letter to EOUSA noting the presence of duplicate records as part of the referral. That document eliminates any genuine dispute over the number of responsive records.

Bartko also asserts that EOUSA should have long ago explained the mix-up over the number of pages of responsive documents. See Pl. Surreply at 4–5. The Court does not disagree. But the tardiness with which EOUSA cleared up the matter does not necessarily invalidate its eventual resolution. In the absence of evidence to the contrary, EOUSA's explanation of the differing page counts — supported not just by a potentially unsworn declaration but by contemporaneous documentary evidence — eliminates the alleged dispute. The Court also notes that, insofar as Bartko argues that EOUSA should have resolved the discrepancy over the number of pages in his previous FOIA suit, such a claim was not before the Court there. Bartko v. U.S. Dep't of Justice, 128 F. Supp. 3d 62, 68 (D.D.C. 2015) ("The 320-page batch [is] . . . not properly before the Court."), aff'd in part and rev'd in part, 898 F.3d 51 (D.C. Cir. 2018).

To the extent Bartko argues more generally that EOUSA has responsive records it has refused to produce, he offers "purely speculative claims about the existence . . . of other

documents" that cannot rebut the Government's sound explanation of the number of responsive records it has processed.  See Ground Saucer, 692 F.2d at 771.

The number of documents at issue thus resolved, the Court may now turn to the exemptions asserted.

### 2.  *Exemptions 5, 6, and 7(C)*

The central question here is whether EOUSA properly withheld 320 pages of responsive documents in reliance on FOIA Exemptions 5, 6, and 7(C).  The answer, in short, is yes and no.

### a.  Exemption 5

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  In other words, under Exemption 5, an agency may withhold from a FOIA requester any "documents[] normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984).  This exemption thus encompasses three distinct categories of information: deliberative-process privilege, attorney-work-product privilege, and attorney-client privilege. See Am. Immigration Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).  EOUSA relies on all three privileges to various extents; as none individually (or together) supports all of its withholdings, the Court must consider each of them.

### i.  Attorney-Client Privilege

The attorney-client-privilege prong of Exemption 5 "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services."  Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997).  EOUSA invoked this privilege to withhold only one document — an email chain in which the U.S. Attorney's Office

for the Eastern District of North Carolina asked for and received legal advice from the agency. That document is labeled OPR-18 in the <u>Vaughn</u> Index. <u>See</u> Def. MSJ, Attach. 1-F (<u>Vaughn</u> Index) at 6–7. Perhaps sensing that challenging this document would be a losing battle, Bartko does not do so here. The Court therefore grants summary judgment to EOUSA as to its decision to withhold OPR-18. One down, many more to go.

ii.    Deliberative-Process Privilege

Next up is the deliberative-process privilege. That privilege shields internal agency "advisory opinions, recommendations and deliberations" in order to "protect[] the decision making processes of government agencies." <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150 (citations omitted). To qualify under this privilege, a record must meet two requirements. First, it must be predecisional — *i.e.*, "antecedent to the adoption of an agency policy." <u>Jordan v. U.S. Dep't of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en banc*) (emphasis omitted), <u>overruled in part on other grounds</u>, <u>Crooker v. Bureau of Alcohol, Tobacco & Firearms</u>, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (*en banc*). Even when an agency subsequently makes a final decision on the issue discussed in the record, the record remains predecisional if it was produced before that final decision. <u>See</u> <u>Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill</u>, 443 U.S. 340, 360 (1979). Second, a record must be deliberative — *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." <u>Vaughn v. Rosen</u>, 523 F.2d 1136, 1144 (D.C. Cir. 1975). "A document that does nothing more than explain an existing policy cannot be considered deliberative." <u>Pub. Citizen, Inc. v. OMB</u>, 598 F.3d 865, 876 (D.C. Cir. 2010).

EOUSA invoked the deliberative-process privilege as to every single document it withheld. It asserts that the documents would reveal "pre-decisional and deliberative

communications" on various matters, including "whether an OPR investigation was warranted" and whether "a formal inquiry would be conducted into alleged misconduct by an AUSA during the course of Mr. Bartko's criminal trial." Francis Decl., ¶ 15. Bartko, for his part, does not contest the predecisional and deliberative nature of most of the documents. His arguments focus instead both on whether EOUSA seeks to shield <u>factual</u> information from release and whether the privilege is vitiated here by an exception for governmental misconduct. The Court concludes that EOUSA has properly invoked the privilege as to certain documents but not as to others.

(a) Proper Invocation

The Court finds that, as a general matter, the agency properly withheld the following documents: OPR-12, OPR-13, OPR-14, OPR-15, OPR-16, OPR-17, OPR-19, OPR-20, OPR-21, OPR-22, OPR-23, OPR-23(a), and OPR-24. <u>See</u> <u>Vaughn</u> Index at 1–22. Most of those documents contain communications among attorneys in various branches of the Department of Justice considering how to handle the alleged misconduct of an AUSA. <u>Id.</u> Apart from his arguments about the government-misconduct exception, Bartko offers no reason why those communications fall outside the privilege. They are predecisional because they address various future determinations, including whether an OPR investigation or other formal inquiry is warranted. And they are deliberative because they reflect the give and take of the Department's processes in making those decisions.

Bartko principally maintains that the deliberative-process privilege is inapplicable to those documents because of the "government misconduct" exception. <u>See</u> Pl. Opp. at 5–8. Under this exception, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective

government." In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir.1997) (internal quotation marks omitted). The exception applies only in cases of extreme government wrongdoing. See Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 66–69 (D.D.C. 2012).

The party seeking release of withheld documents under this exception must "provide an adequate basis for believing that [the documents] would shed light upon government misconduct." Judicial Watch of Fla., Inc., v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 15 (D.D.C. 2000). While there is little caselaw to guide the Court on what quantum of evidence must be shown to support the exception, courts have recognized the need to apply the exception narrowly because

> [i]f every hint of marginal misconduct sufficed to erase the privilege, the exception would swallow the rule. In the rare cases that have actually applied the exception, the "policy discussions" sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government. The very discussion, in other words, was an act of government misconduct, and the deliberative process privilege disappeared.

ICM Registry, LLC v. U.S. Dep't of Commerce, 538 F. Supp. 2d 130, 133 (D.D.C. 2008).

Assuming Bartko's allegations of misconduct rise to the appropriate level, they still do not vitiate the deliberative-process privilege under these circumstances. As the Court found in the previous Bartko case, government documents that "are part of the legitimate governmental process [conducted by OPR]," which may relate to investigations of various forms of government misconduct, are "intended to be protected by Exemption 5." Bartko, 128 F. Supp. 3d at 73 (citation omitted). The government-misconduct exception does not generally apply because the discussions contained in the documents are not themselves acts of misconduct. Id.; see also ICM Registry, 538 F. Supp. 2d at 133. Because Bartko offered no evidence there that

the documents reflected misconduct on the part of OPR, the misconduct exception did not apply. The Court of Appeals presumably agreed, as it affirmed the Court's decision that OPR records in the case were protected by the deliberative-process privilege, notwithstanding Bartko's misconduct-exception arguments. See Bartko, 898 F.3d at 70. The Court will thus follow its prior determination. While applying the privilege to shield records that directly reflect government misconduct is improper, applying it to protect the deliberations of investigative bodies like OPR in their consideration of how to respond to past governmental misconduct is fully consonant with the policies undergirding the privilege. The Court therefore rejects Bartko's argument that the misconduct exception erases the privilege here.

### (b) Improper Invocation

The Court, conversely, concludes that, based on the information currently before it, the following records fall outside the deliberative-process privilege: OPR-17(a), OPR-18(a), OPR-18(b), OPR-18(c), OPR-18(d), OPR-18(e), OPR-18(g), OPR-18(h), OPR-20(a), OPR-21(a), OPR-22(a), OPR-23(b), and OPR-Unnumbered.

OPR-23(b) and OPR-Unnumbered fall outside the privilege for the same reason: Those documents appear to reflect existing policies, rather than predecisional communications about appropriate policies to adopt in the future. Start with OPR-23(b). EOUSA describes the document as a "Memorandum from the Director of EOUSA to all U.S. Attorneys" that "discusse[d] guidance by EOUSA to the Districts regarding discovery policies." Vaughn Index at 20–21. Based on the description, that document may do "nothing more than explain an existing policy" and therefore "cannot be considered deliberative." Pub. Citizen, 598 F.3d at 876. The same appears true of OPR-Unnumbered. EOUSA describes the matter as an "[i]nternal policy document for USAO-NCE" relevant to Justice Department attorneys'

discussion of a prosecutor's misconduct.  <u>Vaughn</u> Index at 20.  As such, the document is not deliberative and therefore not privileged.

The remaining records EOUSA seeks to withhold are judicial opinions or court filings attached to emails among various agency officials.  The agency asserts that those records are privileged because they "indicate what information the attorneys considered and what they determined was important to the OPR investigation."  Def. Reply at 5.  Its argument may prove too much.  If all factual material an agency considers during a decisionmaking process were exempt, an agency would <u>never</u> need to disclose factual matter raised during its policymaking deliberations.  That is wrong and the cases say so.  "[T]he privilege applies only to the 'opinion' or 'recommendatory' portion of the [predecisional] report, not to factual information which is contained in the document."  <u>Coastal States Gas Corp. v. U.S. Dep't of Energy</u>, 617 F.2d 854, 868 (D.C. Cir. 1980) (quoting <u>EPA v. Mink</u>, 410 U.S. 73, 93 (1973)); <u>see also</u> <u>Playboy Enters., Inc v. U.S. Dep't of Justice</u>, 677 F.2d 931, 935 (D.C. Cir. 1982) ("Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.").

It is true, however, that the privilege protects factual material that "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations," <u>In re Sealed Case</u>, 121 F.3d at 737, or that "reflects an exercise of discretion and judgment calls."  <u>Ancient Coin Collectors Guild v. U.S. Dep't of State</u>, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks omitted).  Those circumstances are construed quite narrowly, <u>see</u> <u>Coastal States</u>, 617 F.2d at 868, and courts are admonished to

"beware of 'the inevitable temptation of a governmental litigant to give [this exemption] an expansive interpretation in relation to the particular records in issue.'" Soucie v. David, 448 F.2d 1067, 1078 (D.C. Cir. 1971) (quoting Ackerly v. Ley, 420 F.2d 1336, 1341 (D.C. Cir. 1969)). On the record as it stands, the Court finds that the judicial opinions and other public filings are not privileged.

As to all the documents but OPR-22(a), EOUSA does not specifically explain what disclosure of the opinions or filings would reveal about the deliberative process. It instead offers conclusory statements that these documents were considered by various Justice Department attorneys, leaving it to the Court to sort out how their disclosure would expose the agency's deliberations. See Francis Decl., ¶ 15; Vaughn Index at 7–8. Additionally, EOUSA fails to show that disclosure of the opinions would reveal predecisional matters. As to all but OPR-22(a), OPR does not identify the particular decision or decisionmaking process the opinions and filings were informing. In the absence of further explanation, the Court concludes that the agency has not met its burden of showing that disclosure of the denoted opinions and filings "so expose[s] the deliberative process" as to fall within the deliberative-process privilege. Mead Data Cent. v. U.S. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).

The agency provided a more thorough explanation in support of withholding OPR-22(a). It explained in the Vaughn Index that the document might be understood to constitute "legal authority that was reviewed and assessed by an OPR attorney in order to determine the direction of OPR's investigation into alleged misconduct." Vaughn Index at 17–18. Having reviewed the document *in camera*, however, the Court finds that it would not "inevitably reveal the government's deliberations." In re Sealed Case, 121 F.3d at 737. The opinion merely reflects, among other things, one court's understanding of the due-process rights of criminal defendants;

it is not clear to this Court what the opinion has to do with OPR's investigation, let alone what it

reveals about the internal, predecisional deliberations of OPR investigators.  The Court

emphasizes again that if documents like this opinion, which do no more than stake out external

law or internal policy, were privileged, agencies would be able to shield from disclosure

numerous factual reports and policy manuals simply because they considered them in the process

of making a decision.  Yet it is well established that those reports and manuals, like the opinions

and filings here, are just what the public is entitled to under FOIA.  See, e.g., Soucie, 448 F.2d at

1078 (Office of Science and Technology report to President not exempt); Playboy Enterprises,

677 F.2d at 935 (FBI Task Force report on investigation into informant not exempt); Taxation

With Representation Fund v. IRS, 646 F.2d 666, 680–84 (D.C. Cir. 1981) (various technical and

policy memoranda reflecting working "agency law" not exempt).

### iii.      Attorney-Work-Product Privilege

Moving right along, the Court next considers the attorney-work-product privilege.  "The

attorney work-product [prong of Exemption 5] protects 'documents and tangible things that are

prepared in anticipation of litigation or for trial' by an attorney."  Am. Immigration Council v.

DHS, 905 F. Supp. 2d 206, 221 (D.D.C. 2012) (quoting Fed. R. Civ. P. 26(b)(3)).  As this Court

has noted in the past, this privilege is relatively broad, encompassing documents prepared for

litigation that is "foreseeable" even if not necessarily imminent.  Id.  The privilege, however, is

not boundless.  No doubt potential "future litigation touches virtually any object of a[n agency]

attorney's attention," but "if the agency were allowed 'to withhold any document prepared by

any person in the Government with a law degree simply because litigation might someday occur,

the policies of the FOIA would be largely defeated.'"  Senate of Puerto Rico v. U.S. Dep't of

Justice, 823 F.2d 574, 586–87 (D.C. Cir. 1987) (quoting Coastal States, 617 F.2d at 865).

When reviewing a withholding under the work-product privilege, the D.C. Circuit employs a because-of test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." FTC v. Boehringer Ingelheim Pharms. Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010)). Where a document would have been created "in substantially similar form" regardless of the litigation, work-product protection is not available. See Deloitte, 610 F.3d at 138 (quoting United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)). This means that EOUSA here must at least demonstrate that the lawyer who prepared these documents possessed the "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). For the Government to discharge its evidentiary burden under this test, it generally must provide a description of the contents of the withheld document — which typically includes the document's author and the circumstances surrounding its creation — and provide some indication of the type of litigation for which the document's use is at least foreseeable. See Ellis v. U.S. Dep't of Justice, 110 F. Supp. 3d 99, 108 (D.D.C. 2015).

Although EOUSA invoked the work-product privilege as to every single document it withheld, the Court needs to consider only whether the privilege applies to those documents not otherwise protected: OPR-17(a), OPR-18(a), OPR-18(b), OPR-18(c), OPR-18(d), OPR-18(e), OPR-18(g), OPR-18(h), OPR-20(a), OPR-21(a), OPR-22(a), OPR-23(b), and OPR-Unnumbered. As to those documents, EOUSA offered the following explanation in the Vaughn Index (which is practically identical for each relevant entry):

> Exemption (b)(5), via the attorney work product privilege, was
> asserted to protect inter-agency and intra-agency communications

> between attorneys at the District/OPR, and/or EOUSA's OGC,
> regarding an OPR investigation into the alleged misconduct of an
> AUSA during the prosecution of a criminal case. This court
> opinion/court filing/legal research/internal policy document was
> obtained along with the other records that were obtained from OPR
> for this referral, and it relates to discussions that were held among
> attorneys at the District, OPR, and/or EOUSA's OGC, which
> contain their personal evaluations and opinions, and mental
> impressions regarding the issues they were assessing and discussing.
> Because this information reflects attorney work product, EOUSA
> has determined that no segregable material can be disclosed.

Vaughn Index at 20–21 (OPR-23(b)). The Declaration of EOUSA official Tricia Francis further

explained that the records reflect various attorneys' discussions over whether "a matter was ripe

for referral to OPR." Francis Decl., ¶ 13. The agency offers little additional detail in its Motion.

EOUSA's justifications for withholding records on attorney-work-product-privilege

grounds all fall short for one obvious reason: none of them explains in what manner the records

were "prepared or obtained because of the prospect of litigation." Boehringer, 778 F.3d at 149

(quoting Deloitte, 610 F.3d at 137). Perhaps EOUSA assumes that because the communications

concerned the prospect or pendency of a specific OPR investigation, they must have been

prepared because of litigation. That assumption would be incorrect. As the Court of Appeals

recently explained in the other Bartko case, an OPR investigation is "several steps removed from

. . . [an] 'adjudicative or enforcement' proceeding" or from "civil sanctions." 898 F.3d at 68.

Rather than focus on external litigation, OPR's investigations "focus primarily on internal

disciplinary matters." Id. at 65. For that reason, the court held, records prepared as part of an

OPR investigation were not necessarily "law-enforcement records" under Exemption 7(C). Id. at

68. (More on 7(C) in just a moment.) EOUSA gives the Court no reason to reach a different

conclusion with respect to the work-product privilege under Exemption 5. If the agency seeks to

invoke the privilege as to documents related to an OPR investigation, it must assert that such

documents were prepared in anticipation of litigation and provide some indication of the type of litigation for which each document's use is foreseeable. It does not do either here.

For these reasons, on the record as it stands, the Court rejects EOUSA's argument that it properly withheld records under the work-product-privilege prong of Exemption 5.

b. Exemptions 6 and 7(C)

The Court last considers Defendant's invocation of Exemptions 6 and 7(C). The former protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The latter excludes "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. U.S. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

As with Exemption 5, EOUSA invokes Exemptions 6 and 7(C) to justify withholding every responsive document. And once again, the Court need only consider whether those exemptions properly apply to documents the Court has not already found properly withheld: OPR-17(a), OPR-18(a), OPR-18(b), OPR-18(c), OPR-18(d), OPR-18(e), OPR-18(g), OPR-18(h), OPR-20(a), OPR-21(a), OPR-22(a), OPR-23(b), and OPR-Unnumbered. It need not linger long on these exemptions. In light of the Court of Appeals's recent decision in the other Bartko case, reliance on these exemptions does not survive scrutiny.

Take Exemption 7(C) first. That exemption applies only to "law enforcement records." 5 U.S.C. § 552(b)(7)(C). In Bartko, the Court of Appeals concluded that the records Plaintiff sought of AUSA Wheeler's misconduct were not, on the record before it, law-enforcement records. See 898 F.3d at 65 ("The government has not come close to showing that all records . . . involving misconduct allegations against Wheeler would have been compiled for law enforcement purposes."); id. at 69 (noting that OPR's investigation into Wheeler's misconduct in Bartko's case was "not an investigation with an eye toward law-enforcement proceedings"). Those conclusions apply with equal force to Bartko's request here for records of Wheeler's misconduct — the same records request at issue in the previous matter, merely directed to EOUSA rather than OPR. Perhaps EOUSA can make a particularized showing as to why the responsive records are law-enforcement records, but it has not come close to making that showing so far.

Exemption 6 gets EOUSA no farther. To invoke that exemption, the Government must make a substantial individualized, document-by-document showing that disclosure would inappropriately invade a privacy interest. See Bartko, 898 F.3d at 67. As with Exemption 7(C), the agency does not clear that hurdle for the documents it seeks to withhold. It merely states that Exemption 6 is "asserted to protect information about what materials OPR considered during its investigation, on the grounds that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy." Vaughn Index at 9. EOUSA does not explain the particular privacy interests at stake in each document nor why any invasion of those interests would be unwarranted.

At certain points, EOUSA invoked Exemption 6 to protect the personal identifying information of attorneys involved in the communications and third parties mentioned therein.

See <u>Vaughn</u> Index at 7; Francis Decl., ¶¶ 18–20.  The Court has already upheld EOUSA's decision to withhold many of those communications under the deliberative-process-privilege prong of Exemption 5, making further consideration under Exemption 6 unnecessary.  Insofar as EOUSA raises similar privacy concerns as to the documents not within Exemption 5, it does not explain why those concerns require withholding the documents <u>in full</u>.  Redactions of the relevant documents appear likely to be sufficient to protect "the identifying information of staff . . . and the third parties that are contained in the records," if that is indeed necessary under Exemption 6.  <u>Id.</u>  Suffice it to say for the moment that EOUSA has not shown that it properly withheld the full contents of all responsive records under Exemption 6.

### 3.  *Segregability*

On the home stretch (at least for this request), the Court turns to the matter of segregability — *viz.*, the requirement that an agency disclose non-exempt and segregable portions of otherwise exempted documents.  Before diving into that issue though, a brief recap of what's been decided so far.  First, EOUSA properly withheld OPR-18 under the attorney-client-privilege prong of Exemption 5.  Second, it properly withheld the following documents under the deliberative-process prong of the same: OPR-12, OPR-13, OPR-14, OPR-15, OPR-16, OPR-17, OPR-19, OPR-20, OPR-21, OPR-22, OPR-23, OPR-23(a), and OPR-24.  Third, EOUSA did not properly invoke any FOIA exemption to withhold in full any of the remaining documents: OPR-17(a), OPR-18(a), OPR-18(b), OPR-18(c), OPR-18(d), OPR-18(e), OPR-18(g), OPR-18(h), OPR-20(a), OPR-21(a), OPR-22(a), OPR-23(b), and OPR-Unnumbered.

Notwithstanding the foregoing determination that EOUSA properly withheld certain documents, it is well settled that an agency must "disclose all reasonably segregable, nonexempt portions of the requested record(s)." <u>Roth v. U.S. Dep't of Justice</u>, 642 F.3d 1161, 1167 (D.C.

Cir. 2011) (quotation marks and citation omitted).  It is the Government's burden to demonstrate that no reasonably segregable material exists in such documents.  See Army Times Publ'g Co. v. U.S. Dep't of Air Force, 998 F.2d 1067, 1068 (D.C. Cir. 1993).  The Government must "provide[] a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released."  Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citing Mead Data, 566 F.2d at 261); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir.1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity").  "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits."  Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

Bartko maintains that EOUSA has failed to meet its segregability burden.  See Pl. Opp. at 23–24.  The Court largely agrees.  In the Vaughn Index, EOUSA stated only that "[b]ecause this information reflects attorney work product, EOUSA has determined that there is no segregable material that can be disclosed."  Vaughn Index at 8.  It is true that work-product documents are not subject to segregability analysis, see Judicial Watch, Inc. v. U.S. Dep't of Justice, 432 F.3d 366, 371 (D.C. Cir. 2005), but the Court has already rejected EOUSA's invocation of this privilege.  The Vaughn Index thus provides no useful detail on segregability.  The Francis Declaration offers little more.  It merely says: "All information withheld was exempt from disclosure pursuant to a FOIA exemption.  After EOUSA considered the segregability of the requested records, no reasonably segregable non-exempt information was withheld from Plaintiff."  Francis Decl., ¶ 24.  In light of the brief and conclusory nature of the Government's assertions, the Court concludes, subject to one exception, that EOUSA has not shown that the documents it otherwise properly withheld under Exemption 5 contain no reasonably segregable

information. If the agency seeks to continue withholding the records <u>in full</u>, it must explain with "reasonable specificity" why there are no factual portions or other non-exempt portions of those documents that can be released. <u>See</u> <u>Mead Data</u>, 566 F.2d at 250 (holding that the Government must do more than state without justification that "there were no factual portions of the documents which could be reasonably segregated"); <u>Perry-Torres v. U.S. Dep't of State</u>, 404 F. Supp. 2d 140, 144 (D.D.C. 2005) (finding that the Government's segregability justification as to documents withheld in full was inadequate because it was conclusory and not sufficiently specific).

The exception is OPR-18. The Court found that document properly withheld under the attorney-client privilege. According to EOUSA, the email chain that makes up OPR-18 contains an attorney's request for legal advice from EOUSA and the EOUSA General Counsel's provision of that advice in response. <u>Vaughn</u> Index at 6–7. EOUSA has sufficiently shown that there are no reasonably segregable portions of that document, such that the entire matter is appropriately exempt from production.

\* \* \*

Before moving on to the next FOIA request, a summary of the Court's disposition as to Request No. 2015-759 may prove helpful. It grants summary judgment to EOUSA as to its withholding of Document OPR-18, but otherwise takes Plaintiff's side, at least in part. Documents OPR-17(a), OPR-18(a), OPR-18(b), OPR-18(c), OPR-18(d), OPR-18(e), OPR-18(g), OPR-18(h), OPR-20(a), OPR-21(a), OPR-22(a), OPR-23(b), and OPR-Unnumbered are not, on the record as it stands, protected by Exemptions 5, 6, or 7(C). Although OPR-12, OPR-13, OPR-14, OPR-15, OPR-16, OPR-17, OPR-19, OPR-20, OPR-21, OPR-22, OPR-23, OPR-23(a), and

OPR-24 are generally protected by the deliberative-process privilege, EOUSA must show that there are no reasonably segregable, non-exempt portions of those documents.

B.  Request No. 2014-3847

With most of the heavy lifting out of the way, the Court now turns to Request No. 2014-3847.  EOUSA asks the Court to dismiss Bartko's claim as to this request because it violates a doctrine known as "claim-splitting."  This doctrine bars plaintiffs from maintaining "two actions on the same subject in the same court, against the same defendant at the same time."  Clayton v. District of Columbia, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011)).  EOUSA asserts that Bartko seeks to prosecute Request No. 2014-3847 both in this suit and in his previously filed FOIA action.  The Court agrees.

To start, there seems to be no dispute that Plaintiff seeks to maintain two actions in the same court, against the same defendant, at the same time.  As the Court has mentioned several times over, before Bartko brought this action against EOUSA, he sought relief against it in a prior FOIA suit.  In that case, the Court considered and ruled on Bartko's challenge to EOUSA's processing of No. 2014-3847.  See Bartko, 102 F. Supp. 3d 342.  Bartko appealed the Court's adverse ruling, and the Court of Appeals reversed in part and remanded the case.  See Bartko, 898 F.3d at 76.  The matter is therefore separately pending before this Court.

The only remaining question, then, is whether Plaintiff's claim in this suit is on the "same subject" as that in the remanded matter.  Two suits address the same subject for claim-splitting purposes if, "assuming the first suit was already final, the second suit would be precluded under res judicata analysis."  Clayton, 36 F. Supp. 3d at 94 (quoting Katz, 665 F.3d at 1219).  *Res judicata*, in turn, "bars further claims by parties . . . based on the same cause of action," Montana v. United States, 440 U.S. 147, 153 (1979), "on any ground for relief which [the parties] already

have had an opportunity to litigate." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir.

1981).   Two claims "implicate the same cause of action" when "they share the same nucleus of

facts." Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002) (internal quotation marks and citation

omitted).  The Court must therefore decide whether Bartko's current claim as to Request No.

2014-3847 and the claim in his remanded case share a common nucleus of facts.

　　This one's easy: they do.  Both seek review of the same FOIA request and the same

underlying records.  Bartko even makes largely the same arguments in this suit that he made in

that one, including that EOUSA's demand for a processing fee of $51.90 was improper and that

the agency failed to process responsive documents referred to it by OPR.  Compare Compl., ¶¶

55–62, and Pl. Opp. at 26–28, with No. 13-1135, ECF No. 126 (Second Suppl. Compl.), ¶¶ 1–8,

and ECF No. 159 (Pl. Reply and Response to Cross-Motions for Summary Judgment) at 4–12.

　　Bartko nonetheless urges that dismissal on claim-splitting grounds is inappropriate

because certain of his arguments related to Request No. 2014-3847 — particularly his claim that

EOUSA has never processed the 610 pages of documents referred to it by OPR — have never

been adjudicated.  See Pl. Opp. at 26–27.  That argument falls wide of the mark.  Claim-splitting

applies even if a certain claim has not yet been adjudicated in the earlier suit.  In fact, those are

just the circumstances when the rule against claim-splitting should apply.  To avoid "the burdens

and waste of overlapping litigation," courts may require plaintiffs like Bartko to pursue their

claims in the prior suit, rather than pursuing simultaneously a new case that asks for the same

adjudication.  See 18 Charles Alan Wright *et al.*, Federal Practice and Procedure § 4404 (3d ed.

2018).

　　Bartko gets no farther by suggesting that he has not yet, and may not in the future, have

the opportunity to raise certain of his arguments in his other suit.  Insofar as this specific issue is

no longer pending before this Court, that is because it issued a final judgment on the question, and Bartko either chose not to bring those arguments on appeal or lost. It is well established that *res judicata* "applies to claims a plaintiff had an <u>opportunity</u> 'to litigate[], even if [he] chose not to exploit that opportunity.'" <u>Hudson v. Am. Fed. of Gov't Employees</u>, 308 F. Supp. 3d 388, 394 (D.D.C. 2018) (quoting <u>Hardison</u>, 655 F.2d at 1288). Because Bartko could have raised the arguments he now offers — and, in many cases, did in fact raise those arguments — the Court's final judgment carries *res judicata* effects as to the claims implicating the same cause of action.

For these reasons, the Court concludes that Bartko's claim as to Request No. 2014-3847 should be dismissed because it violates the rule against claim-splitting.

C. <u>Request No. 2014-486</u>

Nearing the end, the Court now turns to Request No. 2014-486. EOUSA asks for summary judgment as to this request principally on the ground that Bartko has not exhausted his administrative remedies. As noted, the Court dismissed this same claim from Bartko's previous FOIA suit on this ground. The question then is whether he took some actions subsequent to the Court's dismissal that satisfied or otherwise excused FOIA's exhaustion requirement. The Court concludes that he did.

A plaintiff seeking to bring a FOIA suit in federal court must generally exhaust her administrative remedies before filing suit. <u>See</u> <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 61 (D.C. Cir. 1990). Exhaustion typically requires a plaintiff to file a FOIA request with the relevant agency and then appeal a denial of that request within the agency. <u>Id.</u> (If the agency fails to comply with certain statutory timeframes associated with processing the initial request or appeal, the plaintiff may be deemed to have constructively exhausted her remedies. <u>Id.</u> at 62.) If a plaintiff does not receive a final determination from the agency on account of her failure to

comply with the agency's FOIA regulations, she will generally be deemed not to have exhausted her claim. See Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004) (noting that many agencies require compliance with regulations "to satisfy the FOIA exhaustion requirement"); see also West v. Jackson, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) ("The failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust.").

FOIA exhaustion is a "jurisprudential doctrine," rather than a jurisdictional one. Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Failure to exhaust thus does not always require dismissal. Rather, "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar.'" Wilbur, 355 F.3d at 677 (quoting Hidalgo, 344 F.3d at 1258–59). So, while dismissal (or summary judgment) is generally appropriate if a plaintiff has failed to exhaust her FOIA claims, it is not warranted in a particular case if enforcing the requirement would subvert the purposes of exhaustion and FOIA more generally. Id.; see also Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 25 (D.D.C. 2008) ("The court need not dismiss a claim for failure to exhaust if it determines that the purposes and policies underlying the exhaustion requirement would not be undermined by reaching the merits." (internal quotation marks and citation omitted)). The purpose of the exhaustion requirement is to give the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Wilbur, 355 F.3d at 677 (quoting Oglesby, 920 F.2d at 61). FOIA's purpose, of course, is to "open agency action to the light of public scrutiny." Rose, 425 U.S. at 372.

The Court concludes that, in light of the actions Bartko took after it dismissed his claim, applying the exhaustion doctrine to preclude review would serve neither the purposes of exhaustion nor those of FOIA. After the Court dismissed this claim with the admonition that

Bartko should seek to exhaust it within the agency, he filed an appeal with the relevant body, the Office of Information Policy.  See Answer, Exh. 1, Attach. L.  Recall that the agency had previously refused to process this particular request before Bartko paid $2,618 in search fees. The appeal thus addressed only the correctness of the agency's denial of a fee waiver.  Id. Instead of resolving the appeal, however, OIP dismissed it on the ground that Bartko's FOIA request remained "the subject of litigation."  Id., Attach. T.  Because Bartko did not receive a final determination from the agency on his FOIA request, he did not technically exhaust his claim.  In the ordinary case, then, he would be precluded from challenging in court the agency's decision to deny his fee waiver.

Preventing Bartko from pursuing relief in court on this particular claim, however, would disserve the purposes of exhaustion and FOIA.  Take the former first.  Unlike a typical FOIA matter requiring the agency's discretion in searching and processing numerous records, Plaintiff merely sought a public-interest fee waiver.  Determining the propriety of such a waiver does not require the agency to "exercise its discretion and expertise" or "make a factual record in support of its decision."  Wilbur, 355 F.3d at 677 (citation omitted).  In any event, the agency had the opportunity to make its own determination on Bartko's claim and declined to do so.  Plaintiff's appeal remained pending for more than eight months before OIP ultimately informed him that it could not be processed given his pending FOIA litigation.  See Answer, Exh. 1, Attach. T (citing 28 C.F.R. § 16.8(b)(2)).  Yet the pending litigation posed no barrier to OIP's ruling on the appeal because the Court had dismissed the particular claim that Bartko was appealing within the agency.  Bartko, 2014 WL 12787640, at *7.  There was thus little chance that processing the appeal could lead to duplicative or conflicting determinations — the concern presumably

motivating EOUSA's policy not to process appeals of matters in litigation.  <u>See</u> 28 C.F.R. § 16.8(b)(2).

Consider next the purposes of FOIA.  Under EOUSA's position, Bartko would not be able to appeal administratively while any of his FOIA claims remained pending in court, even if the particular claim on which he seeks to appeal was dismissed.  That policy effectively penalizes him for pursuing other FOIA claims that are properly in district court.  Under such a policy, the only avenues for Bartko to pursue this claim are to wait until all his other claims in litigation have been resolved or to file a new FOIA request.  Even those avenues may run into barriers, like the time limits agencies impose on administrative appeals, <u>see</u> 28 C.F.R. § 16.8(a) (90 days from the agency's response), or rules district courts have adopted barring plaintiffs from bringing identical FOIA requests to cure their failures to exhaust previous FOIA requests.  <u>See</u> <u>Toensing v. U.S. Dep't of Justice</u>, 890 F. Supp. 2d 121, 140 (D.D.C. 2012).  EOUSA's response in its briefing can be summed up in one word: tough.  It seems to think that if a plaintiff's failure to properly exhaust her claim initially forever precludes her from getting a FOIA determination in the agency or in court, that is the plaintiff's fault for not getting it right the first time.  <u>See</u> Def. Reply at 25.  That kind of one-strike-and-you're-out approach is inconsistent with FOIA's goal of opening agency action to the light of public scrutiny.

The Court therefore concludes that it may consider the merits of Bartko's claim as to FOIA Request No. 2014-486.  On this question, EOUSA argues that it deserves summary judgment on the ground that "Plaintiff does not make any showing that he was entitled to a fee waiver."  <u>Id.</u>  While true, the Court of Appeals very recently determined that Bartko was entitled to a fee waiver for Request No. 2014-3847, <u>see</u> <u>Bartko</u>, 898 F.3d at 76 — the request the Court found above should be dismissed on claim-splitting grounds.  That request, in addition to having

been filed by the same person, implicates the same subject matter as No. 2014-486. It follows

that a fee waiver may likewise be appropriate as to this request. In the absence of additional

briefing since the appellate decision, the Court withholds its ruling on this aspect of EOUSA's

Motion.

The Court, accordingly, denies EOUSA's Motion as to this claim, but it withholds

judgment on the question of Bartko's entitlement to a fee waiver.

## IV. Conclusion

For these reasons, the Court will grant in part, deny in part, and withhold judgment in

part on Defendant's Cross-Motion for Partial Summary Judgment. It will also grant Defendant's

Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 25, 2018