UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY BARTKO,

    Plaintiff,

    v().

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

    Defendants.

Civil Action No. 17-781 (JEB)

**MEMORANDUM OPINION**

This case is the latest chapter in the ongoing saga between *pro se* Plaintiff Gregory Bartko and various agencies of the federal government. Bartko seeks the disclosure of records under the Freedom of Information Act to illuminate alleged prosecutorial misconduct connected to his conviction for fraud in the Eastern District of North Carolina. This particular suit concerns FOIA requests that he submitted to Defendants Executive Office for U.S. Attorneys and U.S. Bureau of Prisons. Defendants now move for summary judgement as to the adequacy of their searches and the withholding of responsive documents pursuant to several FOIA exemptions. Finding discrepancies in EOUSA's search — Bartko now concedes the adequacy of BOP's search — but sufficient justification for the withholdings, the Court will grant in part and deny in part the Motion.

**I.    Background**

This Court is no stranger to Bartko and his FOIA pursuits. See, e.g., Bartko v. U.S. Dep't of Justice, 62 F. Supp. 3d 134 (D.D.C. 2014). It will focus here on those events pertaining to this Motion for Summary Judgment.

1

Plaintiff submitted two FOIA requests that are at issue, one to EOUSA and one to BOP. In the former, dated November 28, 2016, Bartko sought the following:

> Records of correspondence (including email or other forms of electronic messaging) to or from any personnel in the United States Attorney's Office for the Eastern District of North Carolina . . . created between January 1, 2004 and the present date and which was sent or transmitted to any of the following persons. EXCLUDED from this FOIA request are any and all records previously released in connection with Bartko's previously submitted FOIA requests.

ECF No. 1 (Compl.), Exh. 1 (FOIA Request Letter No. 2017-3456) at 1 (emphasis omitted). The letter then listed 17 specific names, along with "[a]ny personnel in the Department of Justice's Office of Professional Responsibility . . . [and] Professional Responsibility Advisory Office" and "[a]ny personnel with Corporate Office Centers in its capacity as the manager of Bartko's executive office suite located in Atlanta, GA." Id. at 1–2. Bartko's letter explained that he sought the records in connection with one or more of three criminal cases prosecuted in the United States District Court for the Eastern District of North Carolina. Id. at 1. Those cases specifically were:

1. United States v. Gregory Bartko, EDNC Case No. 5:09-cr-0321 (D) and on appeal to the Fourth Circuit, Case No. 12-4298;

2. United States v. John K. Colvin, EDNC Case No. 05:09-cr-0072 (D) and on appeal to the Fourth Circuit, Case No. 10-5337; and

3. United States v. Scott B. Hollenbeck, EDNC Case No. 5:07-cr-117-BR.

Id.

EOUSA then assigned Bartko's FOIA request the number 2017-3456 and sent it on to the U.S. Attorney's Office for the Eastern District of North Carolina. See ECF No. 55 (Def. MSJ & Statement of Undisputed Facts), ¶ 3. That office conducted a search that will be discussed in more detail later. On November 1, 2018, following the search, EOUSA released 90 pages of

records to Bartko in full and 20 pages that were partially redacted. See ECF No. 55 (Declaration of Tricia Francis), ¶ 3; ECF No. 57-1 (Pl. Resp. to Def. Statement of Facts), ¶ 7. The agency also withheld 43 pages in full, citing FOIA Exemptions 3, 5, 6, 7(C), and 7(D). Id., ¶¶ 4–18.

Plaintiff submitted a second, related FOIA request to BOP on or about November 29, 2017. See ECF No. 29 (Supplemental Complaint Against BOP), ¶ 3. In this request, Bartko sought mail communications sent to or from inmate Scott Hollenbeck relating to Hollenbeck's sentence reduction or his cooperation as a government witness; mail communications to or from Hollenbeck or his wife relating to the written cooperation agreement among Hollenbeck, his wife, and any personnel within USAO-EDNC; all visitation records associated with Hollenbeck and four specific individuals — Clay C. Wheeler and David Bragdon from USAO-EDNC, U.S. Postal Inspector Michael Carroll, and FBI Special Agent Joan Fleming; and finally, any evidence relating to disciplinary action taken against inmate Hollenbeck by BOP. See ECF No. 29-1 (BOP FOIA Request) at 1. In response, BOP searched its files and systems, including its inmate-email system, prisoner-visitation logs, and Hollenbeck's disciplinary record. See ECF No. 55-4 (Declaration of Kenneth Richardson), ¶¶ 7–10. It found no records responsive to this request. Id., ¶¶ 10–11.

Defendants have now brought a Motion for Partial Summary Judgment relating only to those requests. Plaintiff, in his Response to the Motion, accepts the adequacy of BOP's search. See ECF No. 57 (Pl. Resp. to Def. MSJ) at 1. The only issue that remains for the Court's consideration, therefore, is the FOIA request to EOUSA, forwarded to USAO-EDNC.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations, which "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

### III. Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 755.

Plaintiff contends both that EOUSA failed to conduct an adequate search in response to his FOIA request and that it improperly withheld 43 responsive documents under Exemptions 3, 5, 6, 7(C), and 7(D). The Court will first address the search and then move to the withholding.

    A. Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). Under FOIA, an agency's search for responsive records "is judged by a standard of reasonableness and depends . . . upon the facts of each case." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Agencies must show that a good faith effort was made and that the methods employed could reasonably be expected to produce the information sought. See Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Agency affidavits or declarations explaining the agency's scope and method are generally sufficient to demonstrate that it complied with FOIA. See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). If an agency's explanation is otherwise adequate, only a "showing that the agency's search was not made in good faith" can rebut its assertions or declarations. See Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993).

To demonstrate the adequacy of the search here, EOUSA submitted a declaration from Ethan Ontjes, Assistant United States Attorney, which describes USAO-EDNC's attempts to find responsive documents. See ECF No. 55-3. Ontjes detailed the steps he took once the EOUSA FOIA office had assigned the matter to USAO-EDNC. Id., ¶¶ 2–4. He began by reviewing Plaintiff's request and searching EDNC's case-tracking system, CaseView, using the names "Gregory Bartko," "John Colvin," and "Scott Hollenbeck." Id., ¶¶ 6–7. The search yielded three criminal case files: 5:09-CR-00321-D, 5:09-CR-0072-D, and 5:007-CR-117-BR. Id. Ontjes and staff searched among the physical boxes containing these files and found potentially responsive records. Id., ¶ 8. He also directed EDNC's IT staff to search the email-archiving system, ProofPoint, using the search terms "Bartko," "Colvin," and "Hollenbeck" to find emails responsive to Plaintiff's request. Id., ¶¶ 9–10. Ontjes noted that "the archived emails being searched only go[] back three years from the date of the search" and that 8 responsive emails were found. Id., ¶¶ 9–10. In total, USAO-EDNC located "approximately 185 pages of potentially responsive records and submitted them to EOUSA's FOIA/PA Staff." Id., ¶ 11. After a review for sensitive personal identifying information, EOUSA released 90 pages of these records in full and 20 pages in part, while withholding 43 pages in full. See Francis Decl., ¶ 3.

Bartko argues that USAO-EDNC's search was inadequate for two reasons: 1) he faults Ontjes for relying upon "hearsay statements" from the IT staff who conducted the email search; and 2) he questions USAO-EDNC's stated three-year preservation window since certain emails shared with him in EOUSA's release of records on November 1, 2018, fall outside that time period. See Pl. Resp. to Def. MSJ at 2–3.

First, Bartko's hearsay contention gains no traction. This Court has repeatedly held that a FOIA declarant does not have to <u>personally</u> conduct each aspect of a search and that affidavits

6

based on hearsay can be acceptable. See Niskanen Center, Inc. v. U.S. Dep't of Energy, 328 F. Supp. 3d 1, 10 (D.D.C. 2018); see also Wisdom v. U.S. Trustee Program, 232 F. Supp. 3d 97, 115 (D.D.C. 2017). Here, Ontjes dispatched IT personnel to conduct a search of the email system, where they discovered records of interest, which they passed back to him. See Ontjes Decl., ¶ 9. "[T]here is no requirement that the declarant must have been personally involved in each of the challenged searches." Laverpool v. Dep't of Housing & Urban Development, 315 F. Supp. 3d 388, 391 (D.D.C. 2018) (quoting Wisdom, 266 F. Supp. at 102) (internal quotation marks omitted). The Court, accordingly, finds Ontjes's delegation of search duties to qualified staff reasonable and rejects Bartko's challenge on this point.

Bartko's second argument presents a thornier issue: how did the search of the email-archive system apparently yield emails beyond the three-year deletion window? The Court cannot fully answer this question because Defendants' reply brief is ambiguous on the issue. In describing the search, Ontjes states that "the archived emails being searched only go[] back three years from the date of the search." Ontjes Decl., ¶ 9. Yet the emails turned over to Bartko include a preponderance of messages dated back to 2009. See Pl. Resp. to Def. MSJ at 3. EOUSA rejoins that the older emails may have been found in the physical boxes containing the criminal case files. See ECF No. 65 (Def. Rep. to Pl. Resp.) at 3 ("That EOUSA disclosed emails that were older than three years makes perfect sense because, in addition to the email archive that goes back three years, EOUSA searched boxes containing the criminal case paper files."). Yet neither the brief nor the declaration to which it cites actually says that the older emails were found in the boxes. As a result, the Court is left with either an ambiguity or a contradiction with the stated three-year archive rule.

Without a more adequate explanation from Defendants, the Court feels compelled to deny their Motion on this part of the FOIA request. EOUSA will either have to conduct a further electronic search outside the three-year window or submit an affidavit explaining that the older emails were indeed located in the physical boxes searched.

B. Withholdings

FOIA requires that agencies provide all responsive records unless they fall into one of nine exemption categories. See 5 U.S.C. § 552(b)(1)-(9). Where the agency withholds records, it bears the burden of showing that at least one of the exemptions applies. See Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975). Here, EOUSA relied on Exemptions 6 and 7(C) to withhold 43 pages in full. See Francis Decl., ¶¶ 3–7. On five of the 43 pages, Defendants also claimed one of several other exemptions. See ECF No. 55-2, Exh. 1 (Vaughn Index) at 8–17. As the Court determines that 7(C) covers all documents, it need not consider the other exemptions. Unlike in prior chapters of the Bartko tale, EOUSA's Vaughn Index here provides justifications with a degree of particularity that the D.C. Circuit previously found acceptable. See Bartko v. U.S. Dep't. of Justice, 898 F.3d 51, 71 (D.C. Cir. 2018) (holding that FBI's invocation of 7(C) was "measured and carefully calibrated"). In addition, the Court has reviewed all of the documents *in camera*. See Minute Order of March 6, 2019.

Exemption 7(C) covers "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It requires government agencies and courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). "Information

that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose [of FOIA]." Id. at 1493 (quoting Reporters Comm., 489 U.S. at 773). Exemption 7(C), furthermore, "provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material." CREW v. Dep't of Justice, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014).

As an initial matter, for Defendants to properly invoke 7(C), the records must be compiled for law-enforcement purposes. See Bartko, 898 F.3d at 64. There is little doubt that is the case here. The bulk of the records are emails, letters, and faxes between prosecutors and defense attorneys. The first 28 pages submitted to the Court constitute letters and emails between AUSA David Bragdon and the attorney for a defendant in a related criminal case. See Bates Nos. 11–44. The correspondence covers sensitive plea negotiations, including discussions of critical evidence supporting charges against the defendant and the defendant's personal recollections of the purported wrongdoing. The next nine pages are correspondence between the Government and a different defendant in another related case, including plea negotiations and a list of personal items seized from the defendant's home. Id., Nos. 45–53. The following four pages detail similar plea negotiations with a third related defendant. Id., Nos. 54–57. Finally, the last two pages the Court reviewed are an email chain discussing a list of individuals who would potentially attend Bartko's sentencing. Id., Nos. 62–63. As all of the documents constitute correspondence with prosecutors regarding criminal cases, which are housed in the USAO-EDNC, they are plainly law-enforcement records.

The Court next looks at whether the documents contain private personal information. There are few topics more delicate than discussions about a person's criminal conduct and the possible consequences thereof. 41 of 43 pages here constitute such discussions and include

9

sensitive materials about third parties who have "a privacy interest in not being associated with an investigation." Bartko, 898 F.3d at 71. "[E]ven convicted defendants retain a privacy interest in the facts of their conviction, which can be embarrassing and stigmatizing." Pinson v. U.S. Dep't of Justice, 202 F. Supp. 3d 86, 100 (D.D.C. 2016) (citing ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 7 (D.C. Cir. 2011)). The defendants referenced in the withheld documents maintain a significant privacy interest in the potentially embarrassing particulars of their plea negotiations and specified malfeasance.

Bartko raises the valid concern that there is a substantial public interest in revealing instances of prosecutorial misconduct or overreach. See Bartko, 898 F.3d at 67. These documents, however, do not evince any misconduct at EDNC or DOJ. Plaintiff may well be concerned that they show improper promises or cooperation agreements against him, but there is no such discussion therein. As a result, disclosure does not serve the public interest in revealing misconduct of the type originally raised in Bartko's appeal from his criminal trial. See United States v. Bartko, 728 F.3d 327, 341 (4th Cir. 2013) (discussing improper discovery practices of USAO-EDNC). From the Court's *in camera* review of the withheld documents, none of the 43 pages favors the public interest to a degree that could possibly overcome the privacy of those named. EOUSA's application of 7(C), consequently, "was measured and carefully calibrated to balance the competing private and public interests." Bartko, 898 F.3d at 71.

Regarding the final two pages of the withheld documents (listing potential attendees of Bartko's sentencing), the Court assumes that Plaintiff is aware of the individuals who in fact appeared at his sentencing hearing. The other listed individuals — who did not attend the sentencing — maintain a significant privacy interest in their anonymity. Here, there is no public

interest in identifying them.  Where there is no public interest in disclosure, the privacy interest necessarily prevails.  See Beck, 997 F.2d at 1493.

The Court, *sua sponte*, considers one more issue: segregability.  FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Generally, the agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released."  Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity").  Here, the Court's review has determined that segregability would effectively render these documents worthless to Bartko, as any remaining material would be meaningless.

All 43 pages, therefore, were properly withheld under Exemption 7(C).

## IV. Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion for Partial Summary Judgement.  A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 11, 2019